**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 1:26-cv-475-ADA |
| DIGAO INTERNATIONAL LTD., | DEMAND FOR JURY TRIAL |
| Defendant. | |

**FIRST AMENDED COMPLAINT**

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff"), files this First Amended Complaint against Defendant Digao International Ltd. ("Digao" or "Defendant"), and as claim for relief states as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement under the Patent Laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

**PARTIES**

2.      Plaintiff is a Delaware limited liability company with an address of 50 Fountain Plaza, Suite 1700, Buffalo, New York 14202-2216.

3.      On information and belief, Digao International Ltd. is a Hong Kong limited liability company with a principal place of business at Room 510, 5/F, The Cloud, 111 Tung Chau Street, Tai Kok Tsui, Hong Kong.

**JURISDICTION**

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a)

1

because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

5.      This Court has personal jurisdiction over Defendant because Defendant has done business and continues to do business in Texas, marketed and promoted its products within Texas, and has committed acts of patent infringement in Texas, including but not limited to: promoting, marketing, and advertising the sale of its infringing backpacks and bags in Texas; using, offering to sell, and selling its infringing backpacks and bags in Texas; importing its infringing backpacks and bags into Texas; inducing others to commit infringing acts in Texas; and contributorily infringing the asserted patents by providing a staple article to (1) retailers, wholesalers, and distributors who, in turn, sell and offer for sale the infringing products in Texas; and (2) customers who, in turn, use the infringing products in Texas.  Defendant places its infringing backpacks and bags into the stream of commerce and knowingly target customers in Texas and within this District by selling and offering for sale its infringing products through established wholesale distribution and e-commerce channels.  Thus, Defendant knowingly benefits from the availability of the Texas market for its products and intends to serve Texas residents and increase sales in Texas and within this District.  Defendant purposefully directs activities at residents of this forum, and Swissdigital's claims arise out of and relate to these activities.

6.      In the alternative, this Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2) even if Defendant is not subject to personal jurisdiction in any state's courts of general jurisdiction.  These causes of action arise under federal law because the claims fall under 35 U.S.C. § 271.  The exercise of jurisdiction over Defendant is consistent with due process because Defendant has sufficient minimum contact with the United States such that jurisdiction does not offend traditional notions of fair play and substantial justice.  Defendant purposefully directed its activities at residents of the United States through the sale of the

infringing products in the United States via U.S. retailers, wholesalers, distributors, and affiliate program participants, and sales in the North America market account for the largest percentage of Defendant's business worldwide. Defendant also purposefully availed itself of the financial benefits of the United States by placing registered U.S. trademarks on its infringing products and placing its infringing products into the stream of commerce, knowingly targeting U.S. customers through established wholesale distribution and e-commerce channels. These claims arise out of and relate to the sales of Defendant's infringing products in the United States, and the assertion of jurisdiction is reasonable and fair. Finally, Defendant knowingly induced U.S. retailers, wholesalers, distributors, and affiliate program participants to sell and to offer for sale the infringing products, induced U.S. customers to use the products in an infringing manner in the United States, and contributed to these acts of patent infringement by providing the infringing products.

7. Venue in this judicial district is proper under 28 U.S.C. § 1391(c)(3) because Defendant is not a resident of the United States.

### FACTUAL BACKGROUND

8. Plaintiff is in the business of selling high-tech intelligent backpacks and other innovative consumer goods throughout the world, including within the United States and within this District. Plaintiff is the owner of all rights, title, and interest in and to United States Patent Nos. 10,574,071 ("the '071 Patent"), 10,931,137 ("the '137 Patent"), 10,931,138 ("the '138 Patent"), and 11,601,009 ("the '009 Patent") (collectively, the "Patents-in-Suit"). Plaintiff's products offered for sale and sold in the United States practicing the claims of the Patents-in-Suit are marked with patent numbers in compliance with 35 U.S.C. § 287. A true and correct copy of the '071 Patent is attached hereto as Exhibit A. A true and correct copy of the '137 Patent is

3

attached hereto as Exhibit B.  A true and correct copy of the '138 Patent is attached hereto as Exhibit C.  A true and correct copy of the '009 Patent is attached hereto as Exhibit D.

9.      The '071 Patent, titled: "Bag or Luggage with USB Charging Connector," issued on February 25, 2020.  Plaintiff's invention is a bag or luggage for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed bag or luggage provides a space for placing a power storage device inside the bag or luggage body, a power cable outlet on an outer surface of the bag or luggage body, and a USB extension cable that connects to the power storage device inside the bag.

10.     The '137 Patent, titled: "Sheath for USB Charger" issued on February 23, 2021.  Plaintiff's invention is a sheath that may be incorporated into luggage, bags, activewear, or other wearables for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed sheath receives a female end of a USB cable wherein the operative end of the female end of a USB cable is provided in a flat position with the operative end being uncovered and above an outer surface of the body and the cord of the female end going through an opening between the inner surface and the outer surface.

11.     The '138 Patent, titled: "Sheath for USB Charger," issued on February 23, 2021.  Plaintiff's invention is a sheath that may be incorporated into luggage, bags, activewear, or other wearables for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed sheath receives a female end of a USB cable wherein the operative end of the female end of a USB cable is provided in a flat position with the operative end being uncovered and above an outer surface of the body and the cord of the female end going through an opening between the inner surface and the outer surface.

12.    The '009 Patent, titled: "Sheath for Convenient Charging," issued on March 7, 2023.  Plaintiff's invention is a sheath that may be incorporated into luggage, bags, activewear, or other wearables for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed sheath receives a female end of a USB cable wherein the operative end of the female end of a USB cable is provided in a flat position with the operative end being uncovered and above an outer surface of the body and the cord of the female end going through an opening between the inner surface and the outer surface.

13.    On information and belief, Defendant acts and operates in connection with various related entities, including Dongguan Digao Trading Co., Ltd. ("Deego Trading Co."), and DongGuanShi DiGao Innovation Technology Co., Ltd. ("Deego Technology Co.").

14.    On information and belief, Defendant, together with Deego Trading Co. and Deego Technology Co. (collectively "Deego"), does business under the names "Deego" and "Deego Group" and sells backpacks and bags under the brands "Matein," "Yorepek," "Taygeer," and "Mancro," among others, and also provides the same backpacks and bags with custom brands, trademarks, and logos of its customers.  The owner of the various "Matein" U.S. trademarks is Li Xi Lan, who is publicly listed as a shareholder and supervisor of Deego Trading Co.  DiGao International Limited is the listed business and address on Matein's website.  The owner of the various "Mancro" U.S. trademarks is Deego Technology Co.

15.    A promotional video on deego.en.alibaba.com (the "Deego Website") states the following: "Dongguan Digao Trading Co., Ltd., was founded in 2016 and is located in Dongguan, Guangdong, China.  Our company has more than eight years of experience in the bag and luggage industry.  Our main products are backpacks, laptop bags, travel bags, sport bags, cosmetic bags, storage bags, and so on."

16.     The promotional video on the Deego Website further states the following: "In the U.S., [Deego] can meet the requirements of quick delivery for small or no-need custom logo orders. The company has won the unanimous recognition of consumers with satisfactory quality and perfect after-sales service. We sincerely welcome friends from all over the world to visit our company and cooperate with us on the basis of long-term mutual benefits."

17.     Another promotional video on the Deego Website states essentially the same information regarding Deego Technology Co., using almost verbatim language.

18.     A graphic on the Deego Website shows that Deego conducts "BUSINESS IN OVER 100 COUNTRIES," including the United States. The graphic also touts that Deego produces several of the top-selling backpacks on www.amazon.com (the "Amazon Website"), including the Matien Mlassic Travel Laptop Backpack, the Yorepek Travel Backpack, the Taygeer Travel Backpack, and the Matein NTE Laptop Backpack (collectively, the "Accused Deego Backpacks").



19.     The Deego Website indicates that Defendant and related entities' "[m]ain markets" include North America, South America, and Eastern Europe. The North America market accounts for approximately forty-five percent (45%) of Defendant's business worldwide, significantly more than South America (twenty percent (20%)) and Eastern Europe (fifteen percent (15%)).

20.     On information and belief, Defendant manages and provides content for the "MATEIN Store," "YOREPEK Store," "Taygeer Store," and "Mancro Store" webpages on the Amazon Website.

21.     On information and belief, Defendant sells and has sold backpacks and bags, including but not limited to the Accused Deego Backpacks, through established wholesale distribution and e-commerce channels, including on the Deego Website, the Amazon Website, www.walmart.com (the "Walmart Website"), www.newegg.com (the "Newegg Website"), and www.matein.com (the "Matein Website").

22.     On information and belief, Defendant owns, manages, and provides content for the Matein Website.

23.     On information and belief, Defendant advertises, sells, and conducts business throughout the United States, including within the state of Texas and within this District, and at all relevant times, Defendant was in the business of importing, offering to sell, and selling its backpacks and bags in the United States.

24.     The Matein Website indicates that in January 2023 and April 2024, Defendant sponsored the Corpus Christi Football Club, an American soccer club based in Corpus Christi, Texas, that has competed in the U.S.L. League Two (the club will compete in League One beginning this year).  As a sponsor, Defendant was listed as a corporate partner of the Corpus Christi Football Club on the club's website, and Defendant's Matein backpacks were promoted on the club's Facebook page.  Defendant donated a total of fifty-eight (58) backpacks to the Corpus Christi Football Club.



25. Defendant has and continues to infringe, contributorily infringe, and/or induce others to infringe at least claim 1 of the '071 Patent, at least claim 1 of the '137 Patent, at least claim 6 of the '138 Patent, and at least claim 6 of the '009 Patent in the United States by offering for sale and selling its backpacks and bags, including but not limited to the Accused Deego Backpacks.

26. Defendant directly infringes the Patents-in-Suit by selling and offering for sale in the United States and in this District its infringing backpacks and bags through at least the Deego Website, Amazon Website, Walmart Website, Newegg Website, and Matein Website.

27. Defendant contributorily infringes the Patents-in-Suit by providing a staple article—its infringing backpacks and bags—to (1) U.S. retailers, wholesalers, and distributors who, in turn, sell and offer for sale the infringing products; and (2) U.S. customers who, in turn, use the infringing products.

28. Defendant induces infringement of the Patents-in-Suit by U.S. retailers, wholesalers, and distributors by actively soliciting its business and providing them with infringing products to offer to sell and sell. Defendant expends significant time and resources on the design, manufacture, and quality control of its products and places registered U.S. trademarks on its

products, such that retailers, wholesalers, and distributors benefit from the sales and popularity of the infringing products sold under Defendant's various brands.  Defendant invites third parties to customize Defendant's products with custom brands, trademarks, and logos, such that Defendant's customers may offer to sell and sell the infringing products as their own.  The Matein Website allows prospective distributors to complete an online form to "BECOME A MATEIN BACKPACK DISTRIBUTOR" and promises that "[Deego's] Sales team will get back to you within 2 business days."

29.     Additionally, Defendant induces infringement of the Patents-in-Suit by operating an "Affiliate Program" detailed on the Matein Website (the "Affiliate Program").  Defendant recruits third parties "to easily get orders and earn commission" and instruct them to promote Defendant's products online, including on "TikTok, Facebook, Instagram, Tumblr, Pinterest, [and] Wanelo."  Affiliate Program participants post affiliate links and coupon codes on their social media accounts, referring customers to the Matein website, and earn an eight percent (8%) commission on any resulting sales, including sales of the infringing products.

30.     Further, Defendant knowingly and actively encourages customers to use the products to infringe the Patents-in-Suit by providing instructions and technical support to its customers.  The Deego Website (and other websites selling the Accused Deego Backpacks) instructs customers that the "External USB Port with built-in charging cable provides a more convenient and easier way to charge your phone" and that "[t]he Charging Backpack offers a more convenient and easy access [sic] to charge your devices without opening up the bag."  The Matein Website has webpages answering "FAQs about Backpack with a USB Charging Port" and instructing "How to use the USB port built in the backpack" and "How to Remove USB Port Built in the Backpack" to wash the body of the bag.

9



31.     On information and belief, Defendant performs extensive market research of its competitors and competing products and gathers extensive information about its competitors and competing products in the marketplace, including patents relating to such products. The Matein Website communicates to potential distributors that, as part of the "Matein Advantage," Defendant can provide "Market Analysis Data Support" using Defendant's "[m]ore than 10 years [of] data collections."

32.     On information and belief, given the similarities between the Accused Deego Backpacks and the Patents-in-Suit, the similarities between the Accused Deego Backpacks and Plaintiff's competing products that embody the asserted claims of the Patents-in-Suit and are marked with patent numbers in compliance with 35 U.S.C. § 287, and Plaintiff's patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendant's competitors Targus International LLC, Wenger S.A., and Samsonite International S.A.[1] and involving similar products and some or all of the Patents-in-

---

[1] *Swissdigital USA Co., Ltd. v. Samsonite International S.A.*, 6:23-cv-00196-ADA-DTG (W.D. Tex. 2023); *Swissdigital USA Co., Ltd. v. Wenger S.A.*, 6:21-cv-00453-ADA-DTG (W.D. Tex. 2021); *Targus Int'l LLC v. Swissdigital USA Co., Ltd.*, 8:20-cv-00782-JLS-DFM (C.D. Cal. 2020).

Suit,[2] Defendant was aware of Plaintiff's patented technology and knew or should have known that its own products practiced at least claim 1 of the '071 Patent, at least claim 1 of the '137 Patent, at least claim 6 of the '138 Patent, and at least claim 6 of the '009 Patent.  With this knowledge, Defendant continues to sell and offer to sell its infringing products and encourages customers to use the patented features of the infringing backpacks and bags.

### COUNT ONE
### INFRINGEMENT OF U.S. PATENT NO. 10,574,071

33.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1–32 herein.

34.    Pursuant to 35 U.S.C. § 271(a), Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least claim 1 of the '071 Patent by designing, manufacturing, importing, distributing, offering for sale or use, and/or selling, in the Western District of Texas and elsewhere in the United States, backpacks and bags, including but not limited to the Accused Deego Backpacks, that include a sheath for convenient charging.

35.    In violation of 35 U.S.C. § 271(b), Defendant infringed (literally and/or under the doctrine of equivalents) at least claim 1 of the '071 Patent indirectly by inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '071 Patent claim by third parties, including retailers, wholesalers, distributors, Affiliate Program participants, and customers.

36.    Defendant has done so by affirmative acts, including, but not limited to, selling infringing products, marketing the infringing capabilities of such products, soliciting the business of third-party distributors and Affiliate Program participants, and providing instructions, technical

---

[2] In the Wenger case, this Court conducted a claim construction hearing and issued an opinion in connection with the '071 Patent and the '138 Patent.  *See Swissdigital USA Co., Ltd. v. Wenger S.A.*, 6:21-cv-00453-ADA-DTG (W.D. Tex. 2021) at Dkt. Nos. 54 and 55.

11

support, and other encouragement for the use of such products. Defendant induces infringement of the Patents-in-Suit by U.S. retailers, wholesalers, and distributors by providing them with the infringing products. Defendant expends significant time and resources on the design, manufacture, and quality control of its products, such that retailers benefit from the sales and popularity of Defendant's products sold under Defendant's various brands. Defendant's efforts entice retailers, wholesalers, distributors, and Affiliate Program participants to sell and offer for sale the infringing products and entice customers to purchase the products and infringe.

37.    Defendant knowingly and specifically intended third parties, including but not limited to retailers, wholesalers, distributors, and Affiliate Program participants, to infringe at least claim 1 of the '071 Patent. On information and belief, Defendant knew of the '071 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '071 Patent's claims by third parties. Given the extensive market research that Defendant performs, the similarities between the Accused Deego Backpacks and the '071 Patent, the similarities between the Accused Deego Backpacks and Plaintiff's competing products that embody the asserted claims of the '071 Patent, and Plaintiff's patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendant's competitors Targus International LLC, Wenger S.A., and Samsonite International S.A. and involving similar products and some or all of the Patents-in-Suit, Defendant was aware of Plaintiff's patented technology yet continued to sell and offer to sell its infringing products, including through retailers, wholesalers, distributors, and Affiliate Program participants, and encouraged customers to use the patented features of its backpacks and bags.

38.    In violation of 35 U.S.C. § 271(c), Defendant has infringed (literally and/or under

12

the doctrine of equivalents), at least claim 1 of the '071 Patent indirectly by contributing to the infringement of at least that claim. Defendant provides its infringing backpacks and bags—a staple article—to (1) U.S. retailers, wholesalers, and distributors who, in turn, sell and offer for sale the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

39. Defendant has contributed to the infringement of at least claim 1 of the '071 Patent because it knew that the Accused Deego Backpacks it offered for sale, which feature an "External USB Port with built-in charging cable [that] provides a more convenient and easier way" "to charge your devices without opening up the bag," were infringing and not suitable for substantial non-infringing use.

40. On information and belief, Defendant had knowledge of the '071 Patent as early as February 2020, when the '071 Patent issued.

41. On information and belief, while fully aware that at least the Accused Deego Backpacks infringed one or more of the claims of the '071 Patent, Defendant offered for sale and sold the infringing product, induced others to buy, sell, and use the infringing product, and contributed to the infringement of the '071 Patent.

42. As a result of Defendant's infringement of the '071 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

43. On information and belief, Defendant's infringement of the '071 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '071 Patent.

44. Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '071 Patent.

45. The Accused Deego Backpacks meet each and every element of at least claim 1 of

13

the '071 Patent.  The Accused Deego Backpacks meet the preamble "a bag or luggage for convenient charging, comprising."  The Accused Deego Backpacks are bags for convenient charging, as they include an "External USB Port with built-in charging cable [that] provides a more convenient and easier way" "to charge your devices without opening up the bag."

46.    The Accused Deego Backpacks meet the claim element "a bag or luggage body having a placing space for placing a power storage device inside the bag or luggage body and a power cable outlet on the outer surface of the bag or luggage body."  The Accused Deego Backpacks include a place for placing a power storage device inside the bag and a power cable outlet on the outer surface of the bag body.

47.    The Accused Deego Backpacks meet the claim element "a USB extension cable having a male connector and a female connector having four sides and an operative end." The Accused Deego Backpacks include a USB extension cable with male connector and a female connector having four sides and an operative end.

48.    The Accused Deego Backpacks meet the claim element "wherein the male connector of the USB extension cable is inside the bag or luggage body and is used to connect to the power storage device in the placing space."  The male connector of the USB extension cable is inside the Accused Deego Backpacks and is used to connect to the power storage device in the placing space.

49.    The Accused Deego Backpacks meet the claim element "wherein the female connector is retained outside and adjacent to the power cable outlet with one side of the four sides of the female connector in communication with the bag or luggage body, and the other three sides of the female connector are covered by a water proof sheath that protects the female connector and provides it in a flat position and wherein the sheath is above and covers the power cable outlet."

14

The female connector of the Accused Deego Backpacks is retained outside and adjacent to the power cable outlet. Three sides of the female connector are covered by a water proof sheath and provides it in a flat position and is above and covers the power cable outlet. The remaining side is in communication with the bag or luggage body.

50. The Accused Deego Backpacks meet the claim element "wherein the sheath does not cover the operative end of the female connector which is exposed and fixedly attached above the exterior of the bag such that the operative end of the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged." The operative end of the female connector of the Accused Deego Backpacks is exposed and not covered by the sheath. The operative end of the female connector is fixedly attached to the bag, and as it is on the exterior of the bag, the bag does not need to be opened to accept a charging interface of a product to be charged.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT NO. 10,931,137

51. Plaintiff incorporates by reference the allegations set forth in paragraphs 1–50 herein.

52. Pursuant to 35 U.S.C. § 271(a), Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least claim 1 of the '137 Patent by designing, manufacturing, importing, distributing, offering for sale or use, and/or selling, in the Western District of Texas and elsewhere in the United States, backpacks and bags, including but not limited to the Accused Deego Backpacks, that include a sheath for a USB charger for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.

53. In violation of 35 U.S.C. § 271(b), Defendant has infringed (literally and/or under the doctrine of equivalents) at least claim 1 of the '137 Patent indirectly by inducing, causing,

15

urging, encouraging, aiding, and abetting the infringement of the '137 Patent claim by third parties, including retailers, wholesalers, distributors, Affiliate Program participants, and customers.

54.    Defendant has done so by affirmative acts, including, but not limited to, selling infringing products, marketing the infringing capabilities of such products, soliciting the business of third-party distributors and Affiliate Program participants, and providing instructions, technical support, and other encouragement for the use of such products.  Defendant induces infringement of the Patents-in-Suit by U.S. retailers, wholesalers, and distributors by providing them with the infringing products.  Defendant expends significant time and resources on the design, manufacture, and quality control of its products, such that retailers, wholesalers, and distributors benefit from the sales and popularity of Defendant's products sold under Defendant's various brands. Defendant's efforts entice retailers, wholesalers, distributors, and Affiliate Program participants to sell and offer for sale the infringing products and entice customers to purchase the products and infringe.

55.    Defendant knowingly and specifically intended third parties, including but not limited to retailers, wholesalers, distributors, and Affiliate Program participants, to infringe at least claim 1 of the '137 Patent.  On information and belief, Defendant knew of the '137 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '137 Patent's claims by third parties.  Given the extensive market research that Defendant performs, the similarities between the Accused Deego Backpacks and the '137 Patent, the similarities between the Accused Deego Backpacks and Plaintiff's competing products that embody the asserted claims of the '137 Patent, and Plaintiff's patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendants' competitors Targus

International LLC, Wenger S.A., and Samsonite International S.A. and involving similar products and some or all of the Patents-in-Suit, Defendant was aware of Plaintiff's patented technology yet continued to sell and offer to sell its infringing products, including through retailers, wholesalers, distributors, and Affiliate Program participants, and encouraged customers to use the patented features of its backpacks and bags.

56.    In violation of 35 U.S.C. § 271(c), Defendant has infringed (literally and/or under the doctrine of equivalents), at least claim 1 of the '137 Patent indirectly by contributing to the infringement of at least that claim.  Defendant provides its infringing backpacks and bags—a staple article—to (1) U.S. retailers, wholesalers, and distributors who, in turn, sell and offer for sale the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

57.    Defendant has contributed to the infringement of at least claim 1 of the '137 Patent because it knew that the Accused Deego Backpacks it offered for sale, which feature an "External USB Port with built-in charging cable [that] provides a more convenient and easier way" "to charge your devices without opening up the bag," were infringing and not suitable for substantial non-infringing use.

58.    On information and belief, Defendant had knowledge of the '137 Patent as early as February 2021, when the '137 Patent issued.

59.    On information and belief, while fully aware that at least the Accused Deego Backpacks infringed one or more of the claims of the '137 Patent, Defendant offered for sale and sold the infringing product, induced others to buy, sell, and use the infringing product, and contributed to the infringement of the '137 Patent.

60.    As a result of Defendant's infringement of the '137 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate

Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

61.     On information and belief, Defendant's infringement of the '137 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '137 Patent.

62.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '137 Patent.

63.     The Accused Deego Backpacks meet each and every element of at least claim 1 of the '137 Patent.  The Accused Deego Backpacks meet the preamble "A sheath for convenient charging."  The Accused Deego Backpacks include a sheath for convenient charging, as they include an "External USB Port with built-in charging cable [that] provides a more convenient and easier way" "to charge your devices without opening up the bag."

64.     The Accused Deego Backpacks meet the claim element "a sheath having a left side, top side and right side, a first tapered closed end, a second open end and a surrounding bottom portion surrounding the left side and the right side, the first tapered closed end and the second open end of the sheath."  The Accused Deego Backpacks include a sheath having a left side, top side and right side, a first tapered closed end, a second open end, which allows for insertion of a USB cord, and a surrounding bottom portion.

65.     The Accused Deego Backpacks meet the claim element "wherein at least a portion of the sheath extends above an outer surface of a body, wherein the body has an inner surface, an outer surface and a power cable outlet between the inner surface and the outer surface."  At least a portion of the sheath of the Accused Deego Backpacks extends above an outer surface of the body of the bag.  The Accused Deego Backpacks include a body with an inner and outer surface and a power cable outlet between the inner and outer surfaces.

66.     The Accused Deego Backpacks meet the claim element "wherein the sheath is at

18

the power cable outlet and the sheath receives a female end of a USB cable having four sides, an operative end and a cord end." The sheath of the Accused Deego Backpacks is located at the power cable outlet and receives a female end of a USB cable having four sides, an operative end and a cord end.

67. The Accused Deego Backpacks meet the claim element "wherein the operative end of the female end of the USB cable is removably retained in the second open end of the sheath and the cord end of the female end of the USB cable is retained in the first tapered closed end of the sheath to provide the female end of the USB cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body." The operative end of the female end of the USB cable is uncovered and above the outer surface of the body of the Accused Deego Backpacks, and the USB cord is removably retained and in a flat position. The operative end is retained in the second opening and the cord end is retained within the first tapered closed end.

68. The Accused Deego Backpacks meet the claim element "wherein the surrounding bottom portion is attached to the inner surface of the body." The surrounding bottom portion is attached to the inner surface of the body of the Accused Deego Backpacks, as it is sewn in between the fabric of both the inner and outer surface of the body.

69. The Accused Deego Backpacks meet the claim element "wherein the sheath has at least one ventilation opening on the top side." The top side of the sheath of the Accused Deego Backpacks has several ventilation openings.

**COUNT THREE**
**INFRINGEMENT OF U.S. PATENT NO. 10,931,138**

70. Plaintiff incorporates by reference the allegations set forth in paragraphs 1–69 herein.

19

71.     Pursuant to 35 U.S.C. § 271(a), Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least claim 6 of the '138 Patent by designing, manufacturing, importing, distributing, offering for sale or use, and/or selling, in the Western District of Texas and elsewhere in the United States, backpacks and bags, including but not limited to the Accused Deego Backpacks, that include a sheath for a USB charger for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.

72.     In violation of 35 U.S.C. § 271(b), Defendant has infringed (literally and/or under the doctrine of equivalents) at least claim 6 of the '138 Patent indirectly by inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '138 Patent claim by third parties, including retailers, wholesalers, distributors, Affiliate Program participants, and customers.

73.     Defendant has done so by affirmative acts, including, but not limited to, selling infringing products, marketing the infringing capabilities of such products, soliciting the business of third-party distributors and Affiliate Program participants, and providing instructions, technical support, and other encouragement for the use of such products.  Defendant induces infringement of the Patents-in-Suit by U.S. retailers, wholesalers, and distributors by providing them with the infringing products.  Defendant expends significant time and resources on the design, manufacture, and quality control of its products, such that retailers, wholesalers, and distributors benefit from the sales and popularity of Defendant's products sold under Defendant's various brands. Defendant's efforts entice retailers, wholesalers, distributors, and Affiliate Program participants to sell and offer for sale the infringing products and entice customers to purchase the products and infringe.

74.     Defendant knowingly and specifically intended third parties, including but not limited to retailers, wholesalers, distributors, and Affiliate Program participants, to infringe at least

claim 6 of the '138 Patent.  On information and belief, Defendant knew of the '138 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '138 Patent's claims by third parties.  Given the extensive market research that Defendant performs, the similarities between the Accused Deego Backpacks and the '138 Patent, the similarities between the Accused Deego Backpacks and Plaintiff's competing products that embody the asserted claims of the '138 Patent, and Plaintiff's patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendants' competitors Targus International LLC, Wenger S.A., and Samsonite International S.A. and involving similar products and some or all of the Patents-in-Suit, Defendant was aware of Plaintiff's patented technology yet continued to sell and offer to sell its infringing products, including through retailers, wholesalers, distributors, and Affiliate Program participants, and encouraged customers to use the patented features of its backpacks and bags.

75.    In violation of 35 U.S.C. § 271(c), Defendant has infringed (literally and/or under the doctrine of equivalents), at least claim 6 of the '138 Patent indirectly by contributing to the infringement of at least that claim.  Defendant provides its infringing backpacks and bags—a staple article—to (1) U.S. retailers, wholesalers, and distributors who, in turn, sell and offer for sale the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

76.    Defendant has contributed to the infringement of at least claim 6 of the '138 Patent because it knew that the Accused Deego Backpacks it offered for sale, which feature an "External USB Port with built-in charging cable [that] provides a more convenient and easier way" "to charge your devices without opening up the bag," were infringing and not suitable for substantial non-infringing use.

77.     On information and belief, Defendant had knowledge of the '138 Patent as early as February 2021, when the '138 Patent issued.

78.     On information and belief, while fully aware that at least the Accused Deego Backpacks infringed one or more of the claims of the '138 Patent, Defendant offered for sale and sold the infringing product, induced others to buy, sell, and use the infringing product, and contributed to the infringement of the '138 Patent.

79.     As a result of Defendant's infringement of the '138 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

80.     On information and belief, Defendant's infringement of the '138 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '138 Patent.

81.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '138 Patent.

82.     The Accused Deego Backpacks meet each and every element of at least claim 6 of the '138 Patent.  The Accused Deego Backpacks meet the preamble "A sheath for convenient charging."  The Accused Deego Backpacks include a sheath for convenient charging, as they include an "External USB Port with built-in charging cable [that] provides a more convenient and easier way" "to charge your devices without opening up the bag."

83.     The Accused Deego Backpacks meet the claim element "a sheath having a left side, a right side and a top side, a first closed end, a second open end and a surrounding bottom portion surrounding at least a portion of one of the left side, the right side, the top side, the first closed end and the second open end of the sheath."  The Accused Deego Backpacks include a USB sheath that has a left side, a right side and a top side with a closed end and an open end and a surrounding

22

bottom portion surrounding at least a portion of said USB sheath.

84.     The Accused Deego Backpacks meet the claim element "wherein at least a portion of the sheath extends above an outer surface of a body, wherein the body has an inner surface, an outer surface and an opening between the inner surface and the outer surface." The Accused Deego Backpacks include a body with an inner and outer surface and an opening between the inner and outer surfaces and a USB sheath that extends above an outer surface of a body of the bag.

85.     The Accused Deego Backpacks meet the claim element "wherein the sheath is at the opening and the sheath receives a female end of a USB cable having four sides, an operative end, a cord end and a cord." The USB sheath of the Accused Deego Backpacks has a female end of a USB cable in the USB opening, wherein the female end of the USB cable has four sides, an operative end and a cord end.

86.     The Accused Deego Backpacks meet the claim element "wherein the operative end of the female end of the USB cable is retained in the second open end of the sheath and the cord end of the female end of the USB cable is retained in the first closed end of the sheath to provide the female end of the UBS cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body." The operative end of the female end of the USB cable of the Accused Deego Backpacks is retained in the open end of the USB sheath and the cord end of the female end of the USB cable is retained in the closed end of the USB sheath to provide the female end of the USB cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body of the Accused Deego Backpacks.

87.     The Accused Deego Backpacks meet the claim element "wherein the cord of the female end goes through the opening between the inner surface and the outer surface and the

23

surrounding bottom portion is attached to a portion of the body." The cord end of the female end of the USB cable goes through an opening between the inner and outer surfaces of the body of the Accused Deego Backpacks and a surrounding bottom portion is attached to a portion of the body of the Accused Deego Backpacks.

88.     The Accused Deego Backpacks meet the claim element "wherein the sheath has at least one ventilation opening on at least one of the at least three sides of the water proof sheath." The USB sheath of the Accused Deego Backpacks is waterproof and includes ventilation openings on its top side.

## COUNT FOUR
## INFRINGEMENT OF U.S. PATENT NO. 11,601,009

89.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–88 herein.

90.     Pursuant to 35 U.S.C. § 271(a), Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least claim 6 of the '009 Patent by designing, manufacturing, importing, distributing, offering for sale or use, and/or selling, in the Western District of Texas and elsewhere in the United States, backpacks and bags, including but not limited to the Accused Deego Backpacks, that include a sheath for a USB charger for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.

91.     In violation of 35 U.S.C. § 271(b), Defendant has infringed (literally and/or under the doctrine of equivalents) at least claim 6 of the '009 Patent indirectly by inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '009 Patent claim by third parties, including retailers, wholesalers, distributors, Affiliate Program participants, and customers.

92.     Defendant has done so by affirmative acts, including, but not limited to, selling infringing products, marketing the infringing capabilities of such products, soliciting the business

24

of third-party distributors and Affiliate Program participants, and providing instructions, technical support, and other encouragement for the use of such products. Defendant induces infringement of the Patents-in-Suit by U.S. retailers, wholesalers, and distributors by providing them with the infringing products. Defendant expends significant time and resources on the design, manufacture, and quality control of its products, such that retailers, wholesalers, and distributors benefit from the sales and popularity of Defendant's products sold under Defendant's various brands. Defendant's efforts entice retailers, wholesalers, distributors, and Affiliate Program participants to sell and offer for sale the infringing products and entice customers to purchase the products and infringe.

93. Defendant knowingly and specifically intended third parties, including but not limited to retailers, wholesalers, distributors, and Affiliate Program participants, to infringe at least claim 6 of the '009 Patent. On information and belief, Defendant knew of the '009 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '009 Patent's claims by third parties. Given the extensive market research that Defendant performs, the similarities between the Accused Deego Backpacks and the '009 Patent, the similarities between the Accused Deego Backpacks and Plaintiff's competing products that embody the asserted claims of the '009 Patent, and Plaintiff's patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendant's competitors Targus International LLC, Wenger S.A., and Samsonite International S.A. and involving similar products and some or all of the Patents-in-Suit, Defendant was aware of Plaintiff's patented technology yet continued to sell and offer to sell its infringing products, including through retailers, wholesalers, distributors, and Affiliate Program participants, and encouraged customers to use the patented

features of its backpacks and bags.

94.      In violation of 35 U.S.C. § 271(c), Defendant has infringed (literally and/or under the doctrine of equivalents), at least claim 6 of the '009 Patent indirectly by contributing to the infringement of at least that claim.  Defendant provides its infringing backpacks and bags—a staple article—to (1) U.S. retailers, wholesalers, and distributors who, in turn, sell and offer for sale the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

95.      Defendant has contributed to the infringement of at least claim 6 of the '009 Patent because it knew that the Accused Deego Backpacks it offered for sale, which feature an "External USB Port with built-in charging cable [that] provides a more convenient and easier way" "to charge your devices without opening up the bag," were infringing and not suitable for substantial non-infringing use.

96.      On information and belief, Defendant had knowledge of the '009 Patent as early as March 2023, when the '009 Patent issued.

97.      On information and belief, while fully aware that at least the Accused Deego Backpacks infringed one or more of the claims of the '009 Patent, Defendant offered for sale and sold the infringing product, induced others to buy, sell, and use the infringing product, and contributed to the infringement of the '009 Patent.

98.      As a result of Defendant's infringement of the '009 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

99.      On information and belief, Defendant's infringement of the '009 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '009 Patent.

100.      Plaintiff has suffered damages in an amount to be determined at trial by reason of

Defendant's willful infringement of the '009 Patent.

101.    The Accused Deego Backpacks meet each and every element of at least claim 6 of the '009 Patent.  The Accused Deego Backpacks meet the preamble "A sheath for convenient charging."  The Accused Deego Backpacks include a sheath for convenient charging, as they include an "External USB Port with built-in charging cable [that] provides a more convenient and easier way" "to charge your devices without opening up the bag."

102.    The Accused Deego Backpacks meet the claim element "a sheath having a left side, a right side and a top side, a first closed end, a second open end and a surrounding bottom portion surrounding at least a portion of one of the left side, the right side, the top side, the first closed end and the second open end of the sheath."  The Accused Deego Backpacks include an "external USB port" that has a left side, a right side and a top side with a closed end and an open end and a surrounding bottom portion surrounding at least a portion of said external USB port.

103.    The Accused Deego Backpacks meet the claim element "wherein the sheath is a separate from and attaches to a body having an inner surface, an outer surface and a first port between the inner surface and the outer surface."  The sheath is a separate piece that attaches to the body of the Accused Deego Backpacks, as it is sewn in between the fabric of both the inner and outer surface of the body, and the sheath extends above an outer surface of the body of the bag.  The Accused Deego Backpacks include a body with an inner and outer surface and a port between the inner and outer surfaces.

104.    The Accused Deego Backpacks meet the claim element "wherein at least a portion of the sheath extends above the outer surface of the body."  The Accused Deego Backpacks include a USB sheath that extends above an outer surface of the bag body.

105.    The Accused Deego Backpacks meet the claim element "wherein the sheath

27

receives a female end of a cable connector having surrounding sides, an operative end, a cord end and a cord." The USB sheath of the Accused Deego Backpacks has a female end of a USB cable which has surrounding sides, an operative end, a cord end, and a cord.

106. The Accused Deego Backpacks meet the claim element "wherein the operative end of the female end of the cable connector is retained in the second open end of the sheath and the cord end of the female end of the cable connector is retained in the first closed end of the sheath to provide the female end of the cable connector in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body." The operative end of the female end of the USB cable of the Accused Deego Backpacks is retained in the open end of the USB sheath and the cord end of the female end of the USB cable is retained in the closed end of the USB sheath to provide the female end of the USB cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body of the Accused Deego Backpacks.

107. The Accused Deego Backpacks meet the claim element "wherein the cord of the female end goes through the first port between the inner surface and the outer surface and the surrounding bottom portion is attached to a portion of the body adjacent to the first port." The cord end of the female end of the USB cable goes through an opening between the inner and outer surfaces of the body of the Accused Deego Backpacks and a surrounding bottom portion is attached to a portion of the body adjacent to the opening between the inner and outer surfaces of the body of the Accused Deego Backpacks.

108. The Accused Deego Backpacks meet the claim element "wherein the sheath has at least one ventilation opening on at least one of the left side, the right side, the top side, the first closed end and the second open end." The sheath of the Accused Deego Backpacks includes

28

ventilation openings on its top side.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court enter judgment against Defendant and in favor of Plaintiff:

A.      Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,574,071, together with all rights of recovery under such patent for past infringement thereof;

B.      Declaring that United States Patent No. 10,574,071 is valid and enforceable in law and that Defendant has infringed said patent;

C.      Awarding to Plaintiff its damages caused by Defendant's infringement of United States Patent No. 10,574,071;

D.      Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,931,137, together with all rights of recovery under such patent for past infringement thereof;

E.      Declaring that United States Patent No. 10,931,137 is valid and enforceable in law and that Defendant has infringed said patent;

F.      Awarding to Plaintiff its damages caused by Defendant's infringement of United States Patent No. 10,931,137;

G.      Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,931,138, together with all rights of recovery under such patent for past infringement thereof;

H.      Declaring that United States Patent No. 10,931,138 is valid and enforceable in law and that Defendant has infringed said patent;

I.      Awarding to Plaintiff its damages caused by Defendant's infringement of United

29

States Patent No. 10,931,138;

J.      Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 11,601,009, together with all rights of recovery under such patent for past infringement thereof;

K.      Declaring that United States Patent No. 11,601,009 is valid and enforceable in law and that Defendant has infringed said patent;

L.      Awarding to Plaintiff its damages caused by Defendant's infringement of United States Patent No. 11,601,009;

M.      Entering a preliminary and permanent injunction against Defendant, its officers, employees, attorneys, all parent and subsidiary corporations and affiliates, its assigns and successors in interest, and those persons in active concert or participation with any of them who receive notice of the injunction, enjoining them from continuing acts of infringement of the Patents-in-Suit;

N.      Declaring that Defendant's infringement has been willful and trebling said damages pursuant to 35 U.S.C. § 284;

O.      Declaring that this is an exceptional case and awarding to Plaintiff its costs, expenses, and reasonable attorney fees pursuant to 35 U.S.C. § 285; and

P.      Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues triable by jury.

Dated:  July 2, 2026

30

Respectfully submitted,

By: */s/ Jacqueline P. Altman*
Dariush Keyhani (*pro hac vice to be filed*)
Frances H. Stephenson (*pro hac vice*)
Scott Draffin (*pro hac vice*)
**Keyhani LLC**
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com
sdraffin@keyhanillc.com


Jacqueline P. Altman
State Bar No. 24087010
John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
**NAMAN HOWELL SMITH & LEE, PLLC**
400 Austin Ave., Suite 800
Waco, Texas 76701
Tel: 254-755-4100
Fax: 254-754-6331
jaltman@namanhowell.com
palmer@namanhowell.com
apowell@namanhowell.com

*Attorneys for Plaintiff Swissdigital USA Co., Ltd.*

31